**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0868n.06

**Case No. 09-1771**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ROBERT JACKSON, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | **Dec 21, 2011** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| BLAINE LAFLER, | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| _____ | ) | |

**BEFORE:  BATCHELDER Chief Judge; COLE and COOK, Circuit Judges.**

**ALICE M. BATCHELDER, Chief Judge.**  Robert Jackson was convicted in state court of first-degree felony murder and two other crimes stemming from a marijuana deal gone bad.  After direct appeal and post-conviction proceedings in state courts, he filed pro se his federal habeas petition.  The district court denied his request for an evidentiary hearing and denied his habeas petition.  Now represented by counsel, he appeals only the denial of his request for an evidentiary hearing.  For the reasons that follow, we **AFFIRM**.

**FACTS & PROCEDURAL HISTORY**

Petitioner-Appellant Robert Jackson was convicted in Michigan state court of several crimes arising from the shooting death of Greg Blumenfeld.  On November 24, 2001, Jackson came to Blumenfeld's house to buy marijuana.  Blumenfeld's fiancée of 10 years, Holly Grant, was there, along with two other friends.  Moments after Blumenfeld let Jackson into the house, a masked man, armed with a gun, barged into the house through the same door.  Blumenfeld was shot while trying

to run away.  The masked man told Jackson to "grab that stuff," which apparently meant that he should take the several thousand dollars that Blumenfeld had stuffed in his pants.

The police brought Jackson in for questioning.  After initially requesting an attorney, Jackson indicated his desire to go forward with his statement without counsel.  The tape-recorded conversation went as follows:

[Detective]:     Okay. . . . I'm just gonna put on the bottom of this form that you want an attorney and you do not wanna talk with us at this point in time. . . . [W]e'll conclude the interview now, it's approximately 18–

Petitioner:      No, we can go ahead man.

[Detective]:     You do wanna talk?

Petitioner:      It's just, I just want, you know, it's something telling me to and then something telling me that I need a lawyer, you know what I'm saying, but you know I really didn't do nothing, so . . . .

[Detective]:     It's your option, okay? You . . . you don't want an attorney?  You're sure? I'm not forcing you, okay, is what I'm saying, it's your option. If you wanna talk with us, all you need to do is sign right here by this line, okay?

Petitioner:      (signing)

[Detective]:     And you signed on the bottom line, you do wanna talk to us without an attorney, correct?

Petitioner:      Yep.

In his custodial statement to the police, Jackson initially denied being the shooter.  He later admitted that he had had a gun in his possession, but claimed that it accidentally went off when Blumenfeld bumped into him.  He denied being involved with the masked man and denied taking anything from Blumenfeld.

During the jury trial, Jackson's attorney cross-examined Holly Grant, asking, among other things, why she identified Jackson as the shooter at trial but was not able to identify him in her statement to the police. To this, Grant responded:

> I couldn't remember it [Jackson's name] at the time. I knew the face, but couldn't match it with a name, until I asked my neighbor Mandy because Beback [Jackson's nickname] set her boyfriend on fire. . . . Because he was going to testify against him.

Jackson's counsel did not at that time object or move for a mistrial.

The jury convicted Jackson of first-degree felony murder, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. The court sentenced him to concurrent prison terms of life and 30- to 60-years, plus a 2-year consecutive term.

On direct appeal to the Michigan Court of Appeals, Jackson raised two claims: (1) that the trial court erred by denying his request for a jury instruction on involuntary manslaughter; and (2) that counsel's failure to move for a mistrial when Holly Grant testified about Jackson's setting someone on fire denied him a fair trial. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Jackson*, No. 243644 (Mich. Ct. App. Dec. 11, 2003).

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims he had raised in the Michigan Court of Appeals and two additional claims: (1) that the evidence was insufficient to support an armed robbery conviction; and (2) that Jackson was coerced into making a false confession. The Michigan Supreme Court denied leave to appeal. *People v. Jackson*, No. 125462 (Mich. May 28, 2007).

Jackson filed a motion for relief from judgment in the state trial court, raising six claims. The trial court denied the motion and a subsequent motion for reconsideration. *People v. Jackson*,

No. 02-021048-FC-3 (Saginaw County Circuit Court May 20, 2005 & July 25, 2005).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Jackson*, No. 264999 (Mich. Ct. App. Mar. 9, 2006); *People v. Jackson*, No. 130874 (Mich. Oct. 31, 2006).

Jackson filed his petition for a writ of habeas corpus, raising claims that his trial counsel was ineffective for failing to move for a mistrial in response to Holly Grant's testimony and for failing to obtain suppression of his custodial statement, and that appellate counsel was ineffective for failing to pursue those claims of ineffective trial counsel. Jackson also raised several other claims that are not relevant here. The district court denied relief on all of the claims and denied a certificate of appealability. This court granted a certificate of appealability for the ineffective assistance of counsel claims noted above.

## LAW

We review for abuse of discretion a district court's denial of an evidentiary hearing in habeas proceedings. *See Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). "[A] district court abuses its discretion in denying an evidentiary hearing only if the petitioner can demonstrate that (1) the grounds he alleges are sufficient to secure his release from custody, (2) relevant facts are in dispute, and (3) the state court did not provide a full and fair evidentiary hearing." *Washington v. Renico*, 455 F.3d 722, 731 n.4 (6th Cir. 2006).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") itself also imposes restrictions on whether an evidentiary hearing is permitted. Under both sections 2254(d)(1) and (2),

when reviewing a petition for habeas corpus with respect to any claim that was "adjudicated on the merits in State court proceedings," the district court is limited to the record that was before the state court at the time. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also* 28 U.S.C. § 2254(d)(2). As the Supreme Court recently made clear, a state court decision that is summary in nature or unaccompanied by any explanation still counts as an adjudication "on the merits." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784–85. When the final state court judgment is unaccompanied by any explanation, we may look to the last reasoned judgment of the state court. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

For all other claims, § 2254(e)(2) applies:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2254(e)(2); *see also Pinholster*, 131 S. Ct. at 1401 ("Section 2254(e) continues to have force where § 2254(d)(1) does not bar federal habeas relief.").

## ANALYSIS

Jackson argues that the district court abused its discretion by denying his request for an evidentiary hearing on his habeas claim that his trial counsel was ineffective because counsel did not obtain suppression of custodial statements made to the police. Trial counsel did move to have Jackson's statements suppressed, but he was unsuccessful. Jackson now alleges that after he was brought in for questioning and before the police began to tape-record his conversation with them, they threatened and beat him, and forced him to waive his right to an attorney and to agree to their continuing to question him. Jackson faults trial counsel for not developing the record to show what occurred prior to the taping of the custodial conversation.

Jackson did not raise this claim on direct appeal, and the state court held that it was procedurally defaulted under Michigan Court Rule 6.508(D)(3).[1] That default can be excused for cause—such as ineffective assistance of appellate counsel—and prejudice. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Here, Jackson raised that cause and prejudice argument before the state court in his motion for relief from judgment. The state court rejected this argument, holding that he did not establish good cause. This was an adjudication on the merits. Accordingly,

---

[1] Rule 6.508(D)(3) is a sufficient procedural default rule for AEDPA purposes. *See McFarland v. Yukins*, 356 F.3d 688, 698 (6th Cir. 2004). Because the Michigan Court of Appeals affirmed the state trial court with a simple, one-sentence order, we may look through to the last reasoned judgment of the state court. *See Guilmette*, 624 F.3d at 291. In rejecting Jackson's motion to reconsider the order denying his motion for relief from judgment, the state trial court explicitly rejected all of his claims under either Michigan Court Rule 6.508(D)(2) (claim already raised and rejected) or 6.508(D)(3) (claim defaulted because claim should have been raised earlier). While it is not clear under which subsection the court rejected this particular claim, we find that it must have been subsection (D)(3)—the procedural default rule. That is because Jackson did not previously raise this claim on direct appeal. There would be no way to interpret the state court's order as rejecting Jackson's claim under (D)(2). This specific reference to (D)(3) cannot be read as a more general rejection of Jackson's claim "on the merits" under subsection (D) alone. *See Guilmette*, 624 F.3d at 289–90 (holding orders citing Michigan Court Rule 6.508(D) "can refer to the petitioner's failure to establish entitlement to relief on the merits or procedurally").

we must give AEDPA deference to the state court's rejection of his reason to excuse default. *See*

*Richter*, 131 S. Ct. at 785–87.

Of course, even with AEDPA deference, we still look to see if the state court's decision was

"contrary to, or involved an unreasonable application of" Supreme Court precedent. § 2254(d)(1).

Under Michigan law, the standard for whether ineffectiveness of counsel—even appellate

counsel—can excuse default is the same as the federal ineffective assistance standard. *See People*

*v. Reed*, 535 N.W.2d 496, 504 (Mich. 1995). The state court's holding was neither "contrary to" nor

"involved an unreasonable application" of Supreme Court precedent. Looking to the record, we find

that Jackson clearly waived his right to remain silent and indicated that he wanted to speak to the

police after he had invoked his right to counsel. If we give appellate counsel's performance the

presumption of adequacy that it deserves, *see Strickland v. Washington*, 466 U.S. 668, 689 (1984),

then we cannot conclude that counsel was constitutionally ineffective, much less that the state court

was unreasonable in so holding. Because there is no objective evidence to support Jackson's

allegations that he was kicked and coerced into giving his custodial statement, it was not

unreasonable for appellate counsel not to have pursued this issue. *See Bray v. Andrews*, 640 F.3d

731, 738–39 (6th Cir. 2011) (holding state court not unreasonable in finding that self-serving

statements of petitioner did not support claim of ineffective assistance of counsel).

Jackson argues that the district court abused its discretion by denying his request for an

evidentiary hearing on his habeas claim that appellate counsel was ineffective for failing to pursue

adequately his claim that trial counsel was ineffective with respect to the motion to suppress. But

this is the same claim that was not sufficient to excuse Jackson's defaulting the underlying

ineffective assistance of trial counsel claim. As we have already explained, the state court decided this claim on the merits. Under AEDPA, we are limited to the state court record, and Jackson is not entitled to an evidentiary hearing. *See Pinholster*, 131 S. Ct. at 1398.

Jackson also argues that the district court abused its discretion by denying his request for an evidentiary hearing on his habeas claim that trial counsel was ineffective in addressing the prejudicial testimony of Holly Grant at trial. Jackson raised this claim on direct appeal before the Michigan Court of Appeals and the state court denied his claim on the merits. Because habeas review of this claim is limited to the state court record, he is not entitled to an evidentiary hearing. *See id.*

Lastly, Jackson argues that the district court abused its discretion by denying his request for an evidentiary hearing on his habeas claim that appellate counsel was ineffective for failing to pursue adequately his claim of ineffective assistance of trial counsel with respect to Holly Grant's testimony. Appellate counsel did raise this claim, but Jackson argues that appellate counsel did not pursue it effectively because counsel did not ask for a *Ginther* hearing[2] or otherwise develop the record on direct appeal.

Jackson raised this claim in his motion for relief from judgment. In that motion, he asked for a new evidentiary hearing to develop his claim of ineffective assistance of trial counsel. Having defaulted his opportunity to develop the record on direct appeal, Jackson asked for that default to be excused for good cause—that is, his appellate counsel's ineffectiveness.

---

[2]*See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

The state court denied his claim and denied a motion to reconsider, holding that Jackson did not establish good cause. Again, this is an adjudication on the merits. Because the state court ruled on the merits of Jackson's ineffective assistance of appellate counsel claim "on the merits," a federal habeas court is limited to the state court record, and Jackson is not entitled to an evidentiary hearing. *See id.*

## CONCLUSION

For the foregoing reasons we **AFFIRM** the judgment of the district court.