RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DANTE KEELING,

        *Petitioner-Appellant,*

        *v.*

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,

        *Respondent-Appellee.*

No. 09-4284

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00231—Michael R. Barrett, District Judge.

Argued: January 18, 2012

Decided and Filed: February 14, 2012[*]

Before: SUHRHEINRICH, GIBBONS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Blake P. Somers, BLAKE P. SOMERS LLC, Cincinnati, Ohio, for Appellant. William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Blake P. Somers, BLAKE P. SOMERS LLC, Cincinnati, Ohio, for Appellant. William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

_____

## OPINION
_____

JULIA SMITH GIBBONS, Circuit Judge. Dante Keeling appeals from the dismissal of his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The

_____

[*]This decision was originally issued as an "unpublished decision" filed on February 14, 2012. The court has now designated the opinion as one recommended for full-text publication.

district court dismissed  Keeling's petition, finding that it was barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).  Keeling challenges the district court's statute of limitations finding, the district court's decision not to equitably toll the statute of limitations, and the lack of an evidentiary hearing.  For the following reasons, we affirm.

I.

On March 28, 2001, Troy Davis was the victim of an armed robbery in Cincinnati, which left Davis a paraplegic due to a gunshot wound to the back.  During a hospital interview shortly after the shooting, Davis described his assailant as a "black male dressed in dark clothing, with a 'lazy eye.'"  Davis also indicated that he would be able to identify his attacker.  After receiving a tip in an unrelated arrest that Keeling was responsible for shooting Davis, Cincinnati police presented a photographic array to Davis who picked Keeling out as his assailant.  Keeling was subsequently indicted for aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1), robbery in violation of Ohio Revised Code § 2911.02(A)(2), felonious assault in violation of Ohio Revised Code §§ 2903.11(A)(1) and 2903.11(A)(2), and possession of cocaine in violation of Ohio Revised Code § 2925.11(A).  Firearm specifications accompanied the aggravated robbery and felonious assault counts.  Keeling pleaded guilty to cocaine possession, and a jury found him guilty of the remaining charged counts.  Keeling was sentenced in the Hamilton County Court of Common Pleas on September 13, 2001, to a total of twenty-one years and six months of imprisonment.

A.

Keeling thereafter pursued a direct appeal.  In his initial brief, Keeling raised three claims of error: ineffective assistance of counsel, prejudice due to the failure to suppress the photographic array identification, and insufficient evidence.  Keeling filed a supplemental brief which raised seven additional claims of error.  The Ohio Court of Appeals affirmed the trial court judgment on June 28, 2002.  Keeling did not file a timely appeal of the Court of Appeals's decision to the Ohio Supreme Court.  However, on March 6, 2008, almost six years after the Court of Appeals decision, Keeling filed a

*pro se* motion for leave to file a delayed appeal with the Ohio Supreme Court.  In support of his motion, Keeling asserted that his appellate counsel failed to provide him with notice of the Court of Appeals's decision and "by the time I had discovered that a decision had been made, it was well past the 45 day period for filing the notice of appeal."  The Ohio Supreme Court denied the motion and dismissed without opinion.

B.

Keeling also pursued post-conviction relief in the state courts.  He first filed a Rule 29 motion for acquittal/Rule 33 motion for a new trial on September 13, 2001.  The Court of Common Pleas denied the motion on September 19, 2001.  Nearly four years later, on June 20, 2005, Keeling filed a *pro se* Rule 32.1 motion for reconsideration of sentence/motion for post-conviction relief pursuant to new constitutional ruling in light of *Blakely v. Washington*, 542 U.S. 296, 301–02 (2004), which held that outside of the fact of a prior conviction, any fact that increases the criminal penalty beyond the statutory maximum must be found by a jury and proved beyond a reasonable doubt.  On June 24, 2005, the Court of Common Pleas denied Keeling's motion for reconsideration because under *United States v. Booker*, 543 U.S. 220, 268 (2005), *Blakely* does not apply retroactively to cases not pending on direct review at the time *Blakely* was decided. Keeling did not appeal this ruling.

In his final post-conviction attack on his sentence, Keeling filed a *pro se* motion to correct unlawful sentence on June 26, 2006.  Keeling argued that under *Blakely* and *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), the sentencing statute used to make the judicial findings of fact necessary to exceed the maximum sentence for his aggravated robbery conviction was unconstitutional in violation of the Sixth Amendment, and therefore his sentence should be amended.  The Court of Common Pleas denied the motion on June 30, 2006.  Keeling appealed this decision to the Ohio Court of Appeals. The Court of Appeals affirmed on June 13, 2007. The Court of Appeals found that the sole mechanism for collaterally challenging the validity of a criminal conviction or sentence is pursuant to Ohio Revised Code § 2953.21, which provides that petitions brought pursuant to section 2953.21(A)(1) must be brought within 180 days after the

date that the trial transcript is filed with the court of appeals in the direct appeal. *See also* Ohio Rev. Code Ann. § 2953.21(A)(2). Because Keeling's motion was filed in 2006, the Court of Appeals found that his motion was not timely. In addition, the court found that the Court of Common Pleas did not have jurisdiction to consider Keeling's late challenge because Keeling failed to demonstrate that but for the alleged constitutional violation, no reasonable factfinder would have found him guilty of the offenses, as required under Ohio Rev. Code § 2953.23(A)(1)(b). Keeling then appealed to the Ohio Supreme Court, which denied him leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

## C.

After failing to obtain relief in the state courts, Keeling filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. Keeling's *habeas* petition was officially filed with the district court on April 1, 2008. However, Keeling signed the petition on March 18, 2008, and asserts that he placed it in the prison mailing system on March 19, 2008. Under the prison mailbox rule, a *habeas* petition is considered filed when the prisoner provides the petition to prison officials for filing. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). The magistrate judge applied the prison mailbox rule to Keeling's petition, crediting him with a March 19, 2008 filing date. Keeling's petition asserted four grounds for relief: (1) ineffective assistance of trial counsel for failing to present an expert witness to testify as to the unreliable nature of eyewitness identifications and ineffective assistance of appellate counsel for failing to provide notice of the Ohio Court of Appeals's June 2002 decision in a timely manner; (2) substantial and prejudicial error committed by the trial court when it failed to suppress the photo identification of Keeling where he was the only one in the line-up with a "defective" or lazy eye; (3) sufficiency of the evidence/manifest weight of the evidence where the only evidence presented to convict was that of an intoxicated eyewitness; and (4) void sentence under the Fifth, Sixth, and Fourteenth Amendments and in violation of the due process right to notice of charges and

opportunity to be heard, as well as the right to proof beyond a reasonable doubt by jury determination.

In response, the Warden filed a motion to dismiss arguing that because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, governed Keeling's petition, the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) barred federal court review. Keeling, still proceeding *pro se*, opposed the motion, arguing that equitable tolling should apply to his petition due to the ineffective assistance of his appellate counsel. Keeling alleged that after he filed his timely direct appeal to the Ohio Court of Appeals, his appointed appellate counsel informed him that it would take "several years for the appeal and that [Keeling] should just be patient." Keeling asserted that he waited several years without hearing from his counsel and then grew concerned when counsel would not take his calls in the early part of February 2008. Keeling alleges that he then wrote to the Hamilton County court clerk in order "to see if he could obtain a copy of the decision (because its attachment is a prerequisite to filing a delayed appeal to the Supreme Court)," that he received a copy of the decision on February 12, 2008, and that he then immediately began preparing for his delayed appeal. The Warden moved for leave to file a sur-reply, alleging that Keeling had introduced new matter in his opposition memorandum regarding equitable tolling and the alleged mis-advice he received from his appellate counsel.

The magistrate judge issued a Report and Recommendation ("R&R") on February 12, 2009. The R&R concluded that Keeling's petition was time-barred and that equitable tolling was not warranted and recommended that the Warden's motion to dismiss be granted.

Keeling was given notice of the R&R and filed a motion requesting an extension of time to file objections. The district court granted Keeling an additional forty-five days to respond; thus any objections were due by April 16, 2009. Despite the extension of time, Keeling failed to file timely objections to the R&R. On April 20, 2009, the district court stated that, having reviewed the matter *de novo*, it found the magistrate judge's R&R to be correct, and adopted the R&R, dismissing Keeling's petition with

prejudice. On April 21, 2009, Keeling's second motion for extension of time—in which Keeling requested a sixty day extension of time to file objections to the R&R on the grounds that he was incarcerated, acting *pro se*, and the computers in his correctional institution had been unusable for the prior six weeks—was docketed with the district court. The district court denied the second motion on April 23, 2009. The court found the motion untimely because it was mailed on April 17, 2009, and an extension of time was unwarranted in light of the prior extension of time. The district court further found that *pro se* litigants are not excused from adhering to "readily comprehended court deadlines of which they are well-aware" and that nothing "prevented [Keeling] from filing a handwritten motion for additional time." The district court struck Keeling's objections, which were filed on May 14, 2009, from the record as improperly filed.

This court granted Keeling a certificate of appealability ("COA") on July 12, 2010. Keeling timely appealed.

## II.

Keeling requested *habeas* relief under 28 U.S.C. § 2254. The district court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241. This court has jurisdiction to hear Keeling's appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

The Warden challenges our jurisdiction to hear the appeal because the COA issued by this court did not comply with AEDPA's requirements. AEDPA requires that a COA indicate the specific issue(s) in a *habeas* application that meet the statutory burden set forth in 28 U.S.C. § 2253(c)(2), which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. §§ 2253(c)(2), (c)(3). The specific content required to be included in a COA is set forth in section 2253(c)(3), which directs that "[t]he certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)." 28 U.S.C. § 2253(c)(3). The Warden is correct that Keeling's COA did not identify specific issues. However, the Supreme Court's recent opinion in *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012), resolves the issue in favor of jurisdiction. *Gonzalez* held that § 2253(c)(3)'s requirement is mandatory but nonjurisdictional. *Id.* at 647–51.

III.

We review a district court's dismissal of a *habeas* petition brought pursuant to 28 U.S.C. § 2254 *de novo*, but the district court's factual findings are reviewed for clear error. *Hall v. Warden*, 662 F.3d 745, 749 (6th Cir. 2011); *Thompson v. Bell*, 580 F.3d 423, 433 (6th Cir. 2009). Keeling filed his *habeas* petition in March 2008, so the substantive and procedural standards set forth in AEDPA, which became effective on April 24, 1996, govern our review.

IV.

A.

The Warden argues that because Keeling failed to file timely objections to the R&R, he waived his chance to raise his arguments on appeal. This court has exercised its supervisory powers to establish a general rule that failure to file objections to an R&R waives appellate review of the district court judgment. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981) (establishing rule that party's failure to object to magistrate's report within specified time operates as waiver of appeal). However, the general rule is procedural, it "'is not a jurisdictional rule; the court of appeals retains subject matter jurisdiction over the appeal regardless of the untimely filing or nonfiling of objections.'" *Cottenham v. Jamrog*, 248 F. App'x 625, 631 (6th Cir. 2007) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1222–23 (6th Cir. 1987)). As a result, despite this general rule, the untimely filing of objections does not always bar an appeal, as this court may excuse a default if exceptional circumstances are present that justify disregarding the rule in the interests of justice. *See Thomas*, 474 U.S. at 155; *Alspaugh*, 643 F.3d at 166 (internal quotation omitted). In addition, "[P]ro se 'pleadings are held to a less stringent standard than those prepared by an attorney.'" *Alspaugh*, 643 F.3d at 166 (quoting *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001)).

Here, the district court specifically noted that although the parties received notice under 28 U.S.C. § 636(b)(1)(C) that further appeal would be waived if they failed to file

objections, no objections were timely filed.  However, the district court then reviewed the matter *de novo* and adopted the magistrate judge's recommendations set forth in the R&R.  Although the district court could have resolved the matter on the grounds of waiver, as could we, "because the district court chose to decide this issue on the merits, we will review it on the merits as well."  *See United States v. Robinson*, 352 F. App'x 27, 28–29 (6th Cir. 2009); *see also Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009).

## B.

The district court found that Keeling's petition was untimely and therefore barred by AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1), which states that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1). AEDPA's statute of limitations begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).  The one-year period of limitations is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

Keeling argues that the district court erred in its analysis of the effect his motion for leave to file a delayed appeal before the Ohio Supreme Court had on the statute of

limitations for his *habeas* petition.  The district court concluded that the motion had no effect on its statute of limitations findings because the statute had already expired when the motion was filed on March 6, 2008.  Keeling contends that because he was still able to move for a delayed appeal, his conviction was not yet final under section 2244(d)(1)(A), and thus the one-year limitations period had not yet begun to run. Keeling argues that under *Jimenez v. Quarterman*, 555 U.S. 113 (2009), his conviction was not final until his delayed appeal was resolved, which did not occur until the Ohio Supreme Court denied his motion to file a delayed appeal.  As a result, Keeling argues that none of his claims are barred by the statute of limitations, because the statute of limitations did not even *begin* to run on any of his claims until after the denial of his motion in April 2008.

In *Jimenez*, the *habeas* petitioner was granted leave to file an out-of-time appeal by the state court.  555 U.S. at 116.  The state courts denied relief in that appeal and additional state post-conviction proceedings.  *Id.*  Jimenez then filed a federal *habeas* petition, which was dismissed by the district court as untimely under section 2244(d)(1)(A).  *Id.* at 116–18.  The Supreme Court found that Jimenez's direct review became final when his delayed appeal was resolved and the time for seeking certiorari review in the Supreme Court expired, and not when his original appeal was dismissed by the state courts, because the order granting the out-of-time appeal restored the pendency of his direct appeal.  *Id.* at 120–21.  However, the Court stressed that its holding was a "narrow one" and emphasized that it applied only "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief."  *Id.* at 121.  Indeed, the Court noted that its decision did *not* address whether Jimenez would have been able to timely seek federal *habeas* relief *after* the one-year statutory period expired but *before* the state court granted his motion to reopen direct review.  *Id.* at 120 n.4.  The Court explained that such a petition would not be timely under section 2244(d)(1)(A) under its prior holding "that the *possibility* that a state court may reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal.'"  *Id.* (emphasis added).

The Supreme Court's recent decision in *Gonzalez* answers the question left unaddressed in *Jimenez* and forecloses Keeling's argument that the statute of limitations did not even *begin* to run until *after* his motion for leave to file a delayed appeal was denied by the Ohio Supreme Court. In *Gonzalez*, the Court considered when a judgment becomes "final" for the purposes of §2244(d)(1)(A) if a petitioner "does not appeal to the State's highest court." *Gonzalez*, 132 S. Ct. at 653. For purposes of determining the finality of judgment, the Court found that § 2244(d)(1)(A) consists of two prongs—"the 'conclusion of direct review and the expiration of the time for seeking such review'—[each of which] relate[] to a distinct category of petitioners." *Id.* The Court explained that:

> For petitioners who pursue direct review all the way up to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review . . . in state court[] expires.

*Id.* at 653–54. Because Keeling failed to pursue direct review all the way to the Supreme Court, his judgment became final at the expiration of the time for pursuing direct review in state court. *Id.*

Analyzing when the statute of limitations began to run and the effect of any applicable statutory tolling period for each of the claims in Keeling's federal *habeas* petition confirms that Keeling's petition is untimely. In his direct appeal to the Ohio Court of Appeals, Keeling raised the ineffective assistance of trial counsel claim asserted in ground one of his petition; as well as ground two of his petition, which asserted that the trial court erred by failing to suppress the identification from the photographic line-up; and ground three of his petition, which asserted that there was insufficient evidence to support his conviction. Because Keeling was aware of the factual predicate of those claims at the time of his direct appeal, and the claims do not implicate sections 2244(d)(1)(B) or 2244(d)(1)(C), the one-year statute of limitations began to run on the date that his judgment became final, at the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez*, 132 S. Ct. at 653–54. The Ohio Court

of Appeals affirmed Keeling's conviction on June 28, 2002. Keeling had forty-five days from the date of that decision to seek direct review before the Ohio Supreme Court. *See* Ohio S. Ct. Prac. R. 2.2(A)(1)(a). Because Keeling did not seek further review of the decision within the forty-five day period, the Court of Appeals judgment became final on August 12, 2002. Thus, the statute of limitations began to run on these grounds on August 13, 2002. *See* Fed. R. Civ. P. 6(a)(1) ("[I]n computing any time period . . . exclude the day of the event that triggers the period."); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (applying Rule 6(a) standards to computation of time for section 2244(d) statute of limitations purposes).

Section 2244(d)(2) provides for statutory tolling of the limitations period during the pendency of properly filed motions for state post-conviction relief or other collateral review. 28 U.S.C. § 2244(d)(2). But Keeling did not file any further post-conviction motions until June 20, 2005, when he filed his *pro se* motion for reconsideration/motion for post-conviction relief. At that time, the one-year statute of limitations period had run; thus, statutory tolling did not apply and the statute of limitations for these claims expired on August 13, 2003.

In ground four of his petition, Keeling asserts that his sentence is void due to a constitutional error under the *Apprendi/Blakely* line of cases as well as under *Foster*, a decision of the Ohio Supreme Court, because the sentencing court found facts that increased his minimum sentence. Keeling argues that the sentencing court should not have sentenced him to consecutive sentences unless the additional facts that increased his penalty were proven beyond a reasonable doubt to a jury. At the time he was sentenced, Keeling knew that he was receiving consecutive sentences, and thus he was aware of the factual predicate of his claim. Thus, unless one of the other provisions of section 2244(d) provided a later date for the statute of limitations to begin running, the statute of limitations began to run on the date that the judgment became final. *See* 28 U.S.C. § 2244(d)(1). The same start date for the running of the statute of limitations that was applied to the ineffective assistance of trial counsel claim in ground one, and to grounds two and three therefore applies to this claim. Keeling does not argue that state

action prevented him from timely filing; thus section 2244(d)(1)(B) does not apply. Nor can Keeling take advantage of section 2244(d)(1)(C), because Keeling has not identified a new constitutional rule recognized by the Supreme Court and made retroactively applicable to cases on collateral review. *Apprendi v. New Jersey* was decided on June 26, 2000, before Keeling's conviction became final, and it therefore did not set forth a new constitutional right. 530 U.S. 466 (2000). *Blakely v. Washington*, 542 U.S. 296 (2004), was decided on June 24, 2004—after the judgment in Keeling's direct appeal became final—and is not retroactively applied to cases that were not pending on direct appeal at the time of the decision. *See Humphress v. United States*, 398 F.3d 855, 860–63 (6th Cir. 2005). Finally, *Foster*, a decision of the Ohio Supreme Court, is not retroactively applied to cases that were not pending on direct review at the time of the decision in 2006. *State v. Foster*, 845 N.E.2d 470, 499 (Ohio 2006). As a result, the statute of limitations for ground four of the petition also started to run on August 13, 2002 and expired one year later, on August 13, 2003.

The start date for the running of the statute of limitations for Keeling's claim of ineffective assistance of appellate counsel based on his counsel's alleged failure to timely inform him of the Ohio Court of Appeals decision, asserted in ground one of his petition, differs from the other claims because Keeling could not have been aware of the factual predicate of the claim at the time that the Court of Appeals's judgment became final. Thus, the statute of limitations for this claim began to run when the factual predicate for the claim became discoverable through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D). Although Keeling has not set forth a specific date upon which he learned of the Court of Appeals decision, the record demonstrates that Keeling knew of the decision prior to his June 20, 2005, *pro se* motion for reconsideration in which he referred to the decision. Upon learning of the Court of Appeals's decision in his direct appeal, the factual predicate for Keeling's ineffective assistance of appellate counsel claim would clearly have been discoverable with due diligence, as the forty-five day period for appealing to the Ohio Supreme Court had expired. Although Keeling necessarily learned of the Court of Appeals decision prior to filing his June 20, 2005 motion to reconsider, starting the statute of limitations from the date—more favorable

to Keeling—that his motion was denied by the state court compels the conclusion that Keeling's ineffective assistance of appellate counsel claim is untimely under section 2244(d)(1)(D). Assuming that the statute of limitations began to run on June 25, 2005,[1] three-hundred and sixty-six days elapsed before Keeling filed his motion to correct unlawful sentence on June 26, 2006. Because the one year statute of limitations period had already expired when Keeling filed the motion, statutory tolling does not apply. As a result, Keeling's claim of ineffective assistance of appellate counsel was also untimely, and the motion for delayed appeal could not toll the already expired statute of limitations. Thus, unless equitable tolling applies, Keeling's *habeas* petition is time-barred under § 2244.

## C.

AEDPA's limitations period is subject to equitable tolling. *See Hall*, 662 F.3d at 749 (citing *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010)); *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011). Equitable tolling allows courts to review time-barred *habeas* petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Both ineffective assistance of counsel and "a substantial, involuntary delay in learning about the status of their appeals" may constitute extraordinary circumstances sufficient to warrant relief. *See id.* Despite the presence of such circumstances, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence. *Id.* Thus, to demonstrate that he is entitled to equitable tolling, a *habeas* petitioner must establish: (1) that he has diligently pursued his rights; and

---

[1] The Court of Common Pleas order was signed on June 24, 2005. Thus, the limitations period began to run one day after the date of disposition, June 25, 2005. *See* Fed. R. Civ. P. 6(a). The R&R used the date of filing, June 27, 2005, as the date of disposition, and accordingly found that only three-hundred and sixty-three days elapsed before the statute of limitations was tolled by Keeling's filing of his motion to correct unlawful sentence on June 26, 2006. As a result, the statute was tolled until the Ohio Supreme Court concluded the appeal proceedings from the denial of the motion, with its October 24, 2007 order. By the R&R's calculation, the statute then began to run again on October 25, 2007, and expired two days later, on October 27, 2007.

(2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 103 S. Ct. at 2562 (internal quotation marks omitted); *see also Hall*, 662 F.3d at 749. Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata*, 662 F.3d at 741.

Keeling argues that he is entitled to equitable tolling because he has diligently pursued his rights with the exception of the almost three-year period between the Court of Appeals's June 28, 2002 decision in his direct appeal and when he filed his *pro se*, post-conviction motion for reconsideration on June 23, 2005—a delay which he asserts is attributable to the alleged failure of his appellate counsel to inform him of the Court of Appeals's decision. Keeling also argues that the failure of his appellate counsel to inform him about the result of his appeal constituted an extraordinary circumstance that prevented him from bringing his petition in a timely manner.[2]

Keeling's equitable tolling argument is not well taken. Keeling has not established that an extraordinary circumstance prevented him from filing a timely *habeas* petition or that he has been reasonably diligent. In his *pro se* motion for reconsideration of sentence/motion for post-conviction relief, filed June 20, 2005, Keeling referred to the 2002 Court of Appeals's decision affirming his conviction and sentence.[3] In his motion for leave to file a delayed appeal to the Ohio Supreme Court, Keeling explained that he did not timely appeal the Court of Appeals's decision because "my appeal attorney failed to notify me of th[e] decision." In his memorandum in opposition to the Warden's motion to dismiss, Keeling claimed for the first time that his delay was due

---

[2]Keeling also submits that an analysis of the five factors from *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001), establishes that he is entitled to equitable tolling; however, this court has adopted the two-part test set forth in *Holland* as the governing framework. *Hall*, 662 F.3d at 750 ("[W]e conclude that *Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling."); *see also Robinson*, 424 F. App'x at 442 n.1. As a result, analysis of Keeling's equitable tolling argument is conducted under *Holland*'s two-part test.

[3]Although Keeling inaccurately referred to the date of the decision as March 22, 2002, and the length of the decision as eleven pages instead of the correct date of June 28, 2002, and length of fourteen pages, Keeling used the correct appeal number (C-010610), indicating that by June 2005 he was aware of the Court of Appeals's decision.

to his attorney's instruction to him that it "would take several years for the appeal and that he should just be patient." Keeling then asserted that after several years passed without word from his appellate counsel, he became concerned, so in February 2008 he attempted to obtain a copy of the decision so that he could file a motion for a delayed appeal to the Ohio Supreme Court.

Keeling himself admits that he waited almost three years after the decision in his original appeal to the Ohio Court of Appeals before filing his first *pro se* post-conviction motion. "While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update, . . . this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half." *Robinson*, 424 F. App'x at 443. In *Robinson*, the petitioner requested case updates from his attorney, who failed to provide them, and the petitioner waited eighteen months between his last two update requests. *Id.* at 440–41, 443. This court found that the petitioner failed to exercise the required diligence in pursuing his rights and affirmed the district court decision declining to equitably toll the statute of limitations, even though the petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued. *Id.* at 440–43. Further, we have declined to allow equitable tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal. *Winkfield v. Bagley*, 66 F. App'x 578, 583–84 (6th Cir. 2003). Similarly, this court has declined to equitably toll the statute of limitations where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction. *Elliott v. Dewitt*, 10 F. App'x 311, 312–13 (6th Cir. 2001).

Here, Keeling's delay exceeds that which has previously been found excessive and inappropriate for the application of equitable tolling. *See Robinson*, 424 F. App'x at 443. Keeling did not diligently monitor the status of his appeal. *See Winkfield*, 66 F. App'x at 583–84; *Elliott*, 10 F. App'x at 313. Even after learning of the Court of Appeals's decision, Keeling did not diligently pursue his delayed appeal or file a timely

federal *habeas* petition.  Despite Keeling's argument to the contrary, he has not acted with the sufficient diligence to warrant equitable tolling of the statute of limitations.

Finally, we note that Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing.  *See Hall*, 662 F.3d at 751–52; *Winkfield*, 66 F. App'x at 583.

D.

Keeling argues that the district court erred in failing to hold an evidentiary hearing on his *habeas* petition to allow Keeling to fully present his claims for relief. Keeling contends that he is entitled to a evidentiary hearing because his *habeas* petition alleges sufficient grounds for release, there are relevant facts in dispute, and the state courts failed to hold a full and fair evidentiary hearing by declining to hold any hearing at all on his claims.  The Warden argues in response that the district court did not err by not conducting a hearing where Keeling did not request an evidentiary hearing, either before the state courts or in his *habeas* petition, and the relevant facts relating to the statute of limitations issues are not in dispute.

The district court did not err by not conducting an evidentiary hearing on Keeling's claims.  Keeling does not appear to have requested an evidentiary hearing before the district court; Keeling does not cite to or appeal from a denial of a request for an evidentiary hearing by the district court.  *Cf. United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996) (holding that defendant's failure to request an evidentiary hearing in district court largely disposed of his claim on appeal that the district court should have given him one).

Even assuming that Keeling requested an evidentiary hearing, AEDPA restricts the availability of federal evidentiary hearings.  *See Davis v. Lafler*, 658 F.3d 525, 539 (6th Cir. 2011) (*en banc*) (Martin, J., concurring in part).  For a claim that was adjudicated on the merits in a state court proceeding, sections 2254(d)(1) and (d)(2) of AEDPA apply, and the district court is limited to the record that was before the state court at the time.  *See Pinholster*, 131 S. Ct. at 1398; 28 U.S.C. § 2254(d)(2).  If a claim

has not been adjudicated on the merits in a state court proceeding, 28 U.S.C. § 2254(e)(2) applies. This section provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* "The requirements of Subsections (A) and (B) apply only if the petitioner 'has failed to develop the factual basis of a claim,' § 2254(e)(2), only if in other words 'there is a lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel[.]'" *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 420, 432 (2000)). The Supreme Court has explained that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437.

With the exception of Keeling's ineffective assistance of appellate counsel claim, the grounds for relief in Keeling's petition were adjudicated on the merits by the Ohio state courts. As a result, in light of *Cullen v. Pinholster*, we are limited to the state court record, and the district court did not err in failing to hold an evidentiary hearing on these claims. *See Jackson v. Lafler*, No. 09-1771, 2011 WL 6382099, at *4 (6th Cir. Dec. 21, 2011); *Robinson v. Howes*, 663 F.3d 819, 823–24 (6th Cir. 2011).

Because Keeling's ineffective assistance of appellate counsel claim was not adjudicated on the merits in state court, the district court could not grant an evidentiary hearing on the claim unless the requirements of 28 U.S.C. § 2254(e)(2) were satisfied.

*See Robinson*, 663 F.3d at 823.  Keeling does not argue that a new constitutional rule applied to his claim of ineffective assistance of appellate counsel, 28 U.S.C. § 2254(e)(2)(A)(i), or that the factual predicate of the claim was previously undiscoverable with the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii), and therefore he must demonstrate that he attempted to develop the factual basis for his claims in state court with the requisite diligence.  *See Pinholster*, 131 S. Ct. at 1400 n.4. Keeling did not request an evidentiary hearing in state court, nor did he pursue the state statutory methods that would provide the basis for an evidentiary hearing in state court. Keeling essentially concedes this fact in a footnote in his brief, where he acknowledges that he was "arguably require[d] . . . to have sought an evidentiary hearing on claims previously presented" in state court, but then attempts to argue that "it is not fully clear on the status of the record in this case that Mr. Keeling would have been entitled to a hearing, even if one had been requested."  Keeling's motion for reconsideration of sentence/motion for post-conviction relief, filed on June 20, 2005 with the Hamilton County Court of Common Pleas, did not request an evidentiary hearing.  As a result, Keeling fails to clear the initial hurdle posed by section 2254(e)(2) for his ineffective assistance of appellate counsel claim, because he did not request an evidentiary hearing in state court.  *Cf. Bowling v. Parker*, 344 F.3d 487, 511–12 (6th Cir. 2003) (finding that petitioner met burden of developing factual basis of claim imposed by section 2254(e)(2) where he "repeatedly sought an evidentiary hearing in state court").

V.

For the foregoing reasons, we affirm the judgment of the district court.