NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0196n.06

Case No. 20-3530

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 12, 2022
DEBORAH S. HUNT, Clerk

|  | )  |  |
| --- | --- | --- |
| EDWARD B. AVERY, SR., | ) | |
|    Petitioner - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LYNEAL WAINWRIGHT, Warden, | ) | SOUTHERN DISTRICT OF OHIO |
|    Respondent - Appellee. | ) | |
| | ) | |

Before: GUY, MOORE, and GIBBONS, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which MOORE, J., joined. GUY, J. (pp. 24–34), delivered a separate opinion concurring in the judgment.

**JULIA SMITH GIBBONS, Circuit Judge.** Edward B. Avery, Sr. appeals the district court's denial of his fourth habeas corpus petition as procedurally defaulted. The district court issued a certificate of appealability limited to Ground 2 of Avery's petition, which alleges his due process rights were violated by the presence of an alternate juror during jury deliberations. Avery filed a motion to expand the certificate of appealability to include Ground 1, which alleges that Avery's consecutive rape and kidnapping sentences violate double jeopardy. On appeal, Avery argues that neither Ground 1 nor 2 is procedurally defaulted. Alternatively, he argues that any procedural default of Ground 2 is excusable because he can demonstrate cause and prejudice due to ineffective assistance of appellate counsel. The Warden argues the district court's judgment should be affirmed because Avery's petition is time-barred and he is not entitled to equitable tolling.

We deny Avery's motion to expand the certificate of appealability to include Ground 1, and we affirm the district court's denial of Avery's claims as procedurally defaulted.

**I**

Avery was convicted of rape, robbery, aggravated burglary, and kidnapping in 1997. The Ohio Court of Appeals summarized the facts:

> The facts leading to appellant's conviction[s] for the above crimes occurred on March 14, 1997. That morning appellant returned to an apartment complex in Marysville, Ohio, after a long night of drinking, to find himself locked out of the apartment where he was staying. While waiting for the other occupants of the apartment to return home, appellant sought refuge from the rain on an apartment patio belonging to Vicky Johnson, another tenant in the complex. From her patio, appellant watched Vicky Johnson and her boyfriend until they left the building. While they were gone, appellant entered the apartment through an unlocked door.
>
> Meanwhile, Johnson drove her boyfriend to work and returned home shortly before 6:00 a.m. As Johnson entered her bedroom, she was attacked by appellant. A short struggle ensued as appellant covered Johnson's head with a shirt and threw her down on the bed. Appellant proceeded to rape Johnson, using a blanket to further blind her and protect his anonymity. At one point, Johnson did catch a glimpse of appellant's fingers and knew her attacker was black. After the rape, appellant led Johnson to the bathroom, her head still covered, and told her to shower. Although the door to the restroom did not lock, Johnson was able to brace her body between the sink and the door to keep appellant from reentering the bathroom. Appellant finally left Johnson's apartment through the patio door, picking up $2 from a coffee table before leaving.
>
> Appellant was subsequently arrested and confessed to the events surrounding the rape of Vicky Johnson on March 14, 1997. Appellant pled not guilty to the charges against him, and his case proceeded to trial. Appellant was subsequently found guilty by a jury of rape, aggravated burglary, robbery, and kidnapping . . . .

*State v. Avery*, 709 N.E.2d 875, 878 (Ohio Ct. App. 1998). Avery was sentenced to an aggregate term of thirty years of imprisonment and adjudicated a sexual predator. *See id*.

Avery appealed, and the state appellate court affirmed the trial court's judgment. *Id.* at 887. After failing to timely appeal to the Ohio Supreme Court, Avery filed a motion for a delayed appeal, which the Ohio Supreme Court denied. *State v. Avery*, 743 N.E.2d 401 (Ohio 2001).

Avery filed an application for reopening of the appeal under Ohio Appellate Rule 26(B), which the appellate court denied. He then filed a motion for reconsideration, which the appellate court also denied. The Ohio Supreme Court dismissed the appeal on December 23, 1998.

In 2010, after further motion practice, the trial court conducted a de novo sentencing hearing because, although it notified Avery of the terms of post-release control at his sentencing hearing, it failed to include those terms and specify the method of conviction in its Journal Entry of Sentencing. *State v. Avery*, No. 14-10-35, 2011 WL 3656470, at *1 (Ohio Ct. App. Aug. 22, 2011). Avery was resentenced to an aggregate sentence of thirty years of imprisonment, with credit for time served, and correctly informed as to post-release control both orally and in writing. *Id.* The method of conviction was also included in the resentencing entry. *Id.* Avery unsuccessfully appealed the resentencing judgment. *Id.* at *4.

This appeal stems from Avery's fourth federal habeas petition. His first petition was dismissed without prejudice at his request on June 9, 2000. On January 13, 2003, Avery's second petition was dismissed as time-barred. His third petition was transferred to our court as second or successive on September 13, 2013. On May 21, 2014, our court denied Avery's motion to authorize the district court to consider the second or successive habeas petition.

Undeterred, Avery again moved our court for an order authorizing the district court to consider a second or successive habeas petition. This time, we explained that "a habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements." DE 7-1, Order, Page ID 951 (quoting *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015)). Avery's 2010 resentencing resulted in a new judgment, so we concluded Avery did not need authorization to file a habeas petition.

3

On April 12, 2018, Avery filed his fourth habeas petition in the Southern District of Ohio, in which he pursued nine claims for relief.[1] The Warden moved to dismiss Avery's petition, arguing it was time-barred. On referral, U.S. Magistrate Judge Kimberly Jolson held an evidentiary hearing and recommended denying the Warden's motion to dismiss. Although the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA") had passed, Judge Jolson found that equitable tolling was warranted. After considering objections from both parties, the district court adopted Judge Jolson's Report and Recommendation ("R. &. R.").

After full briefing on the petition, Judge Jolson recommended dismissing Avery's claims as procedurally defaulted. Avery filed objections to the R. & R. The district court overruled Avery's objections, adopted the R. & R., and dismissed Avery's claims as procedurally defaulted. Avery now appeals, seeking a certificate of appealability for Ground 1, challenging the district court's dismissal of his claims as procedurally defaulted, and asking this court to award habeas relief.

**II**

Whether the district court properly calculated the timeliness of a habeas corpus petition is reviewed de novo. *DiCenzi v. Rose*, 452 F.3d 465, 467 (6th Cir. 2006). A district court's determination regarding a habeas petitioner's procedural default is reviewed de novo. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). The district court's application of the "cause and prejudice" test excusing procedural default is also reviewed de novo. *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004).

---

[1] Where ascertainable, we use as the filing dates of Avery's petitions and motions the dates on which he delivered them "to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988).

**III**

First, we address the Warden's arguments that Avery's petition is time-barred and he is not entitled to equitable tolling.  Because Avery diligently pursued his rights and extraordinary circumstances prevented the timely filing of his fourth habeas petition, we agree with the district court's conclusion that Avery was entitled to equitable tolling and that the instant habeas application is timely.

**A**

A petition for a writ of habeas corpus must be filed within one year of the latest of four dates, here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  That one-year period is subject to equitable tolling, which allows a court to toll the statute of limitations where the petitioner shows (1) he has pursued his rights diligently and (2) some extraordinary circumstance prevented timely filing.  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749–50 (6th Cir. 2011).  "[E]quitable tolling is used sparingly by federal courts.  The party seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson*, 624 F.3d at 784 (citation omitted).

The district court must exercise its equitable powers on a case-by-case basis, with an emphasis on the need for flexibility and for avoiding mechanical rules.  *Holland*, 560 U.S. at 649–50 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)).  This means "exercis[ing] judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case."  *Id*. at 650.  Where a district court's ruling on equitable tolling is based on undisputed facts or an issue

of law, this court's review is de novo; in all other cases, it is for an abuse of discretion. *Robertson*, 624 F.3d at 784. Despite Avery's argument to the contrary, the facts here are undisputed, and so we review the district court's grant of equitable tolling de novo.

**B**

Avery was resentenced in 2010. This judgment became final on April 17, 2012, ninety days after the Supreme Court of Ohio dismissed his resentencing appeal, when the time to file a petition to the United States Supreme Court expired. A new, final judgment "restarts AEDPA's one-year window to challenge that judgment." *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016).

On January 23, 2013, Avery filed his third habeas petition, which the district court transferred to our court as second or successive.[2] Before a panel of our court, as he had before the district court, Avery argued that his 2010 resentencing resulted in a "new judgment" and that under *Magwood v. Patterson* he was allowed to file a new habeas petition challenging the underlying conviction. 561 U.S. 320, 341–42 (2010) (explaining that where there is a "'new judgment intervening between two habeas petitions,' an application challenging the resulting new judgment is not 'second or successive' at all" (citation omitted)).

On May 21, 2014, in an unpublished order, the panel rejected Avery's argument and concluded *Magwood* did not allow Avery to raise challenges to his underlying conviction, only his newly imposed sentence. At this point, Avery "had no further avenue for relief, as he could not petition for rehearing or for a writ of certiorari on this issue."[3] CA6 R. 22, Reply Br., at 4.

---

[2] This is significant because under the gate-keeping requirements for second-or-successive habeas petitions, a proposed claim that was previously presented in a prior habeas petition must be dismissed. 28 U.S.C. § 2244(b)(1).

[3] The Warden claims Avery failed to file a motion under Fed. R. Civ. P. R. 60(b) for relief from the district court's 2013 decision or seek rehearing from the Sixth Circuit's 2014 decision. Neither was available to Avery. First, the district court transferred Avery's petition to this court as second

Following our court's rejection of his *Magwood* argument, Avery discontinued his research of this issue. But, in 2015, our court changed course, adopting the very argument that Avery previously made and that we previously rejected.

We held that "a habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements." *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015). Then, in 2016, we applied *King* to a partial resentencing, holding that "a partial resentencing that results in the imposition of post-release control is the *type* of change that creates a new judgment for purposes of the second or successive bar" because "this type of change alters the sentence 'pursuant to' which the petitioner is 'in custody.'" *In re Stansell*, 828 F.3d 412, 419 (6th Cir. 2016). Avery, King, and Stansell had the same legally relevant facts and made the same legal arguments before our court, but King and Stansell were granted relief and Avery was not.

After learning of these decisions from a fellow inmate, Avery moved our court for leave to file a second or successive habeas petition on July 17, 2017. On February 21, 2018, we denied the motion as unnecessary, explaining that "Avery's 2010 resentencing resulted in a 'new judgment,'" and he "faces no procedural impediment to filing a new § 2254 action in the district court and does not need the authorization of this court to file such an action." DE 1-1, 2018 Order, Page ID 24. We did not address the statute of limitations or equitable tolling.

---

or successive, so the district court no longer had jurisdiction to hear a Rule 60(b) motion once the case was docketed in this court. Second, Sixth Circuit precedent makes clear that "once a panel of this court grants or denies an individual permission to file a second or successive petition in the district court, § 2244(b)(3)(E) prohibits any party from seeking further review of the panel's decision, either from the original panel or from the en banc court." *In re King*, 190 F.3d 479, 480 (6th Cir. 1999) (en banc); *see also* 28 U.S.C. § 2244(b)(3)(E).

## C

Avery's fourth habeas petition is entitled to equitable tolling because he diligently pursued his rights and extraordinary circumstances prevented him from filing his fourth habeas petition within the statute of limitations. Avery learned of the decisions in *King* and *Stansell* in May 2017[4] when our court applied them to a case involving one of Avery's fellow inmates, *In re Smith*, No. 16-4699, Dkt. 9-2 (6th Cir. May 11, 2017). On July 17, 2017, Avery filed a motion in this court for leave to file a second or successive habeas petition. On February 21, 2018, this court denied Avery's motion as unnecessary in light of *King* and *Stansell*. Then, on April 12, 2018, Avery filed his fourth habeas petition. At each step, Avery acted promptly within the constraints of his confinement.

In *Jones v. United States*, we held that a petitioner demonstrated diligence when he sought relief within two months of learning of a court decision affecting his case, despite the case itself having been decided a year earlier. 689 F.3d 621 (6th Cir. 2012). We determined Jones was entitled to equitable tolling because he satisfied the "extraordinary circumstances" requirement:

> Jones explained in his filings before the district court that he did not learn of the Supreme Court's holding in *Begay* [*v. United States*, 553 U.S. 137 (2008)] until May 12, 2009, due in large part to a series of prison transfers immediately before the case was announced that separated him from his legal materials and made it difficult for him to acquire access to new legal information from other prisoners. . . . Jones is partially illiterate and must rely on other prisoners for knowledge of changes in the legal landscape. He also has a variety of medical conditions, including seizures, that require frequent medication and impeded his ability to adequately obtain legal information. Jones averred that throughout this time he was constantly questioning others for legal advice on how to challenge his convictions, but did not receive information about *Begay* until other inmates

---

[4] The Warden does not contest that Avery discovered this information in May 2017; rather, she takes issue with Avery's lack of explanation for "why he could not have consulted with other inmates regarding his case and how to proceed prior to 2017." CA6 R. 21, Appellee Br., at 27. But, as this court has acknowledged, inmates often learn of legal developments through the "prison grapevine, which is hardly a model of speed or accuracy." *Jones v. United States*, 689 F.3d 621, 627 n.4 (6th Cir. 2012).

informed him about it in May 2009.[4] Within two months of learning of his new right, he was able to obtain sufficient assistance to submit a motion to vacate under § 2255.

> 4. Even though knowledge of filing deadlines is no longer part of our inquiry, we note the inherent differences between when the clock starts upon the conclusion of direct appeal and when the clock starts upon the issuance of a new Supreme Court case. Although we expect inmates to have knowledge of both, it would strain credulity to suggest that a defendant has the same level of access to information about the issuance of new Supreme Court cases as he does about his direct appeal. Inmates without attorneys typically become apprised of Supreme Court developments only through the prison grapevine, which is hardly a model of speed or accuracy.

> Although any one of the above factors may not constitute "extraordinary circumstances" alone, the combination of all of these factors justifies applying equitable tolling to Jones's claims. Furthermore, Jones has met his burden of demonstrating that he was not sleeping on his rights and was diligent in pursuing new claims and this claim in particular once he became aware of its existence. The argument for equitable relief in this case is made all the more compelling by the United States's position that Jones should receive the relief he requests.

*Id.* at 627–28 (citations omitted).

We agree with Magistrate Judge Kimberly Jolson's analysis that *Jones* offers two key lessons here: (1) "when evaluating a pro se prisoner's diligence in pursuing his rights, courts should consider the realities of prisoners' conditions of confinement," and (2) "in certain circumstances, a pro se prisoner should not be faulted for failing to stay apprised of new legal developments through his or her own research." DE 21, Order and R. & R., Page ID 1559. A petitioner's ignorance of the law and pro se status are, of course, not excuses for a lack of diligence. But the lessons we can learn from *Jones* comport with Supreme Court's guidance that inmates are required to exercise "reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (2010) (cleaned up). Although a variety of factors weighed into our decision in *Jones* that are not present in Avery's case, *Jones* provides precedent for granting equitable tolling based in part on the petitioner seeking relief after his discovery of new law despite some time having passed.

9

Avery learned of *King* and *Stansell* from Smith one year and nine months after *Stansell* was decided. But it is well-established that prisoners have limited resources and often learn of new cases from fellow inmates. Moreover, Avery is in the unique position that a panel of our court specifically rejected Avery's argument on the exact legal issue addressed in *Stansell*, suggesting continuous legal research on Avery's part would be futile. Even the most experienced of counsel would likely find it unwise to continue litigating an issue he previously, personally lost in this court. Instead, Avery spent his limited time researching new avenues for relief. This is not a lack of diligence. Avery timely filed his 2013 petition. Although we initially concluded in our 2014 order that Avery's petition was second or successive, Avery, proceeding pro se at the time, made the same argument we later adopted in *King* and *Stansell*. Once Avery learned from his fellow inmate of potential new grounds to challenge the 2014 order, he quickly filed a motion for leave to file a second or successive petition. Finding such a petition unnecessary for the reasons discussed above, the Sixth Circuit directed Avery to file a new habeas petition in the district court, which he promptly did. Under the unique facts of this case, Avery demonstrated reasonable diligence in pursuing his rights.

**D**

To satisfy the extraordinary circumstances element, a petitioner must demonstrate an external obstacle prevented the timely filing of a habeas petition. *Holland*, 560 U.S. at 649. This is a fact-intensive inquiry, and we find that the unique facts of this case satisfy the extraordinary circumstances requirement because Avery's delay in filing the instant 2018 petition was due to external factors beyond his control.

After his 2010 resentencing judgment became final, Avery timely filed the 2013 petition, which was transferred to this court as second or successive. Then, a panel of our court directly

10

rejected Avery's arguments, denying him any further avenue for pursuing relief. This 2014 order was the sole impediment to Avery's proceeding with his timely 2013 petition. When Avery learned of new grounds to challenge that order, he promptly filed a motion in this court for leave to file a second or successive habeas petition, which we deemed unnecessary. Within two months of that ruling, Avery filed the instant petition. This series of events leads us to the same question Magistrate Judge Jolson asked: "What more could [Avery] have done to ensure that his current petition was filed in as timely a manner as possible?" DE 21, Order and R. & R., Page ID 1563.

"[N]ot every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005). However, this court's 2018 order reopened Avery's ability to challenge his 2010 resentencing by finding that he faced no procedural bar to filing a new habeas petition in district court. Avery is not merely claiming that he did not receive notice of a legal rule and therefore he is entitled to equitable tolling. A panel of this court already concluded that, "in light of" *King* and *Stansell*, Avery "faces no procedural impediment to filing a new § 2254 action in the district court and does not need the authorization of this court to file such an action." DE 1-1, 2018 Order, Page ID 24. Avery is not, therefore, solely relying on a change in the law to support his argument in favor of equitable tolling. He is relying on a change in the law from which a panel of this court has already found he should benefit.

Avery's factual and procedural circumstances are unique. Equitable tolling is a fairness doctrine, under which neither can petitioner game the system nor will the court fault them for circumstances outside their control. Avery is not gaming the system. He lost in our court and understandably believed that was the end of the matter. As soon as he discovered the matter was

11

reopened, he moved for relief in our court and was told that he could file his habeas petition. Under these specific and uncommon circumstances, equitable tolling is warranted.

## IV

The district court concluded that Ground 1 and Ground 2 were procedurally defaulted. The district court granted a certificate of appealability on Ground 2, but Avery also seeks a certificate of appealability as to Ground 1. To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the district court dismisses a habeas claim on procedural grounds, a certificate of appealability should be issued if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). All reasonable jurists would find that Ground 1 is procedurally defaulted, so we deny Avery's motion to expand the certificate of appealability to include his double jeopardy claim. We likewise find Ground 2 to be procedurally defaulted. We analyze the procedural default of Grounds 1 and 2 together.

## A

Procedural default occurs when a habeas petitioner convicted of a crime in state court fails to present a claim to the highest court of the state prior to presenting the claim in federal court. A petitioner must present "'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.3d 494, 497 (6th Cir. 1987)); *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). A claim is procedurally defaulted if three conditions are met: (1) "there is a state procedural rule with which the petitioner failed to comply;" (2) "the state courts actually enforced

the state procedural sanction;" and (3) the state procedural rule is "an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim." *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). If all these conditions are met, a federal court may not review the claim unless the petitioner demonstrates "that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error." *Id.*

For Ground 1 and Ground 2, the first three conditions for finding procedural default are met: First, Avery failed to comply with Ohio's res judicata rule, which requires all claims to be raised on direct appeal, by failing to raise Ground 1 and Ground 2 on direct appeal from his 1997 conviction. *Avery v. Warden, Marion Corr. Inst.*, No. 2:18-cv-387, 2020 WL 2126523, at *2 (S.D. Ohio May 5, 2020). Avery raised Ground 1 and Ground 2 for the first time on direct appeal from his 2010 resentencing. In 2011, the Ohio Court of Appeals found these claims were barred by the doctrine of res judicata because they did not pertain to the imposition of post-release control and could have been raised on direct appeal from Avery's 1997 conviction. *See State v. Avery*, No. 14-10-35, 2011 WL 3656470, at *3–4 (Ohio Ct. App. 2011). Second, the Ohio Court of Appeals enforced its state procedural sanction by barring Avery from raising Ground 1 and Ground 2 on appeal from his 2010 resentencing. *Id.* Third, when properly applied, Ohio's res judicata rule is an adequate and independent state procedural ground to foreclose review of a constitutional claim. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

**B**

Avery argues the Ohio appellate court misapplied its own rule of res judicata. Ohio's rule of res judicata requires a "final judgment," which bars the defendant from later raising any claims that could have been raised on direct appeal from "that judgment." *State v. Perry*, 226 N.E.2d 104,

108 (Ohio 1967).[5]  Avery claims his 2010 resentencing rendered his 1997 conviction void; therefore, there was no final judgment that could have a preclusive effect and Ohio misapplied its own rule of res judicata by finding otherwise.

In support of his argument, Avery points to our court's characterization of his 2010 resentencing as a "new judgment" not requiring a second or successive habeas petition.  But whether Avery was entitled to file a new federal habeas petition is a consideration entirely separate from whether Ohio correctly applied its own state law of res judicata.  Avery is correct that we have previously declined to find issues procedurally defaulted when an Ohio court's application of res judicata was "misplaced."  *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001).  That is because of the long-established rule dictating that the adequacy of a state procedural bar is a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).  Our court, however, has only applied *Greer*'s holding to cases involving a state court's failure to consider evidence outside of the record or other similar *factual* errors with the state court's decision.[6]  Here, Avery is not claiming that the state court misapprehended the facts; his claim is that the state court misinterpreted state law governing the application of res judicata by failing to consider his 1997 conviction entirely void.  *See State v. Fischer*, 942 N.E.2d 332, 336 (Ohio 2010) (characterizing whether a judgment is void or

---

[5] In Ohio, "[u]nder the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *Perry*, 226 N.E.2d at 108.

[6] *See Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005) (ineffective assistance of counsel claim not procedurally defaulted because such claims are not barred by res judicata under Ohio law when evidence outside the direct appeal record is presented); *Post v. Bradshaw*, 621 F.3d 406, 423 (6th Cir. 2010) (Ohio state court misapplied its own res judicata rules when petitioner could not have brought post-conviction proceedings as to his claim because the supporting evidence was then-undiscovered); *see also Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001); *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Durr v. Mitchell*, 487 F.3d 423, 434 (6th Cir. 2007).

14

voidable under Ohio law), overruled on other grounds by *State v. Harper*, 159 N.E.2d 248 (Ohio 2020).

The state appellate court considered and rejected this argument. *Avery*, 2011 WL 3656470, at *2–4. Ohio law requires a judgment of conviction to "set forth the plea, the verdict, or findings upon which each conviction is based, and the sentence." *United States v. Adkins*, 729 F.3d 559, 567 (6th Cir. 2013) (quoting Ohio Crim. R. 32(C)).[7] Although Avery's sentence did not technically meet these requirements, the state appellate court held that this does not mean his 1997 sentence was a nullity. *Avery*, 2011 WL 3656470, at *2–4. Instead, Ohio law provides that a technical failure to comply with Rule 32(C) by failing to include the manner of conviction does not violate a statutorily mandated term. *See id.*

The state appellate court extended this same reasoning to the other clerical mistakes in Avery's judgment. *Id.* While the remedy for such mistakes is "resentencing," Ohio courts have not suggested that this encompasses anything more than "issuing a corrected sentencing entry that complies with Crim. R. 32(C)." *Id.* (quoting *State ex rel. DeWine v. Burge*, 943 N.E.2d 535, 540 (Ohio 2011)). Ultimately, the state appellate court held that

> [a]ll of the parties were aware of the fact that Avery was found guilty after a jury trial and the record reflected this fact in numerous places. The trial court's correction of the sentencing entry to reflect what had actually occurred was merely a nunc pro tunc correction that did not render the previous judgment a nullity. Avery, having already had the benefit of a direct appeal, cannot raise any and all claims of error in successive appeals.

*Id.* at *4.

The state appellate court determined that Avery's 1997 conviction was not a nullity and, therefore, had preclusive effect. Because our court treats state court interpretations of state law

---

[7] Ohio Criminal Rule 32(C) has since been amended.

with deference, we will not disturb the Ohio state court's application of its own res judicata law. *See Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984) ("[S]tate courts are the final authority on state law."). Therefore, we find that jurists of reason would not debate whether the district court correctly rejected Ground 1 as procedurally defaulted. Likewise, we find Ground 2 to be procedurally defaulted.

## V

Avery argues he can establish cause and prejudice to excuse any procedural default of Ground 2 because of ineffective assistance of appellate counsel during his initial direct appeal. To do so, Avery must show that his appellate counsel's failure to raise the alternate-juror argument on appeal "rose to the level of a constitutional violation" under *Strickland v. Washington*, 466 U.S. 668 (1984). *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). *Strickland* sets forth a two-prong analysis for assessing ineffective assistance of counsel claims: (1) "the defendant must show that counsel's performance was deficient" and (2) "the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687. We affirm the district court's finding that Avery has not established deficient performance or prejudice excusing procedural default.

## A

First, to find that counsel's ineffectiveness constitutes cause excusing procedural default, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Avery filed a Rule 26(B) application to reopen his initial direct appeal, in which he argued that his appellate counsel was ineffective for failing to raise the alternate-juror issue. The state appellate court denied Avery's Rule 26(B) application as untimely, for exceeding the page limit, and for failure to state an issue of ineffective assistance of appellate counsel. Avery

16

then filed a motion to reconsider, which the state appellate court again denied. But in its denial, the appellate court noted that Avery's application was denied for numerous reasons, including on the merits. It failed, however, to specify how the application was denied on the merits.

For procedural default to bar consideration of a claim on habeas review, the last state court rendering a judgment must clearly and expressly state that its judgment rests on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 262–65 (1989). In *Harris*, the Supreme Court indicated in a footnote that if the last state court ruling based its conclusion on the merits and, alternatively, on a state procedural ground, then the procedural ground ruling prevails. *Id.* at 264 n.10. Our court adopted this reasoning in *Clifford v. Chandler*, in which we held that a discussion of the merits will not supersede an independent procedural bar to habeas relief. 333 F.3d 724, 728–29 (6th Cir. 2003), overruled in part on other grounds by *Wiggins v. Smith*, 539 U.S. 510 (2003).

In denying Avery's motion to reconsider, the state appellate court held that the timeliness of the 26(B) application is "irrelevant to the ultimate conclusion that said application did not give rise to a genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal." DE 5, Ex. 19, Page ID 340. But the Warden argues that the state appellate court "never retracted its determination that Avery's 26(B) application exceeded the page limits." CA6 R. 21, Appellee Br., at 40. Although a discussion of the merits will not automatically supersede a procedural bar, because both the initial denial and the denial of reconsideration addressed the merits, the last state court judgment was not one that clearly and expressly rested on a procedural bar. Therefore, we find that Avery's ineffective assistance of appellate counsel claim is not itself procedurally defaulted.

17

**B**

The next issue is whether Avery has demonstrated that his appellate counsel was deficient. Under this first prong of *Strickland*, we assess whether "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 68–88. The Warden argues that appellate counsel's performance was not deficient because the alternate juror claim is meritless, and it is not deficient performance to fail to raise a meritless claim.

Avery argues that his appellate counsel was ineffective for failing to raise the alternate juror claim on direct appeal. At Avery's trial, the trial court released the alternate juror before the jury began deliberations. The trial judge told the alternate juror:

> I'm going to release you, but I want you to know that you're not allowed to discuss this case with anyone, or indicate to anyone how you would have voted, or what your ideas are on the matter, until this jury has come back and reported their findings. . . . You're free to go or stay as you please . . . .

DE 45, Trial Tr., Vol. V, Page ID 2325.

Unbeknownst to the trial court and the parties, the alternate juror remained and was present in the jury room during deliberations. After deliberating for two hours, the jury submitted a question and returned to the courtroom. At this point, the trial court discovered the alternate juror's presence and Avery moved for a mistrial. The trial court questioned both the alternate juror and the jury foreperson, who both stated that the alternate juror did not participate in the jury deliberations. The jury foreperson further stated that the alternate juror was seated away from the table of jurors and at the other end of the room during deliberations. Based on this information, the trial court overruled Avery's motion for a mistrial, dismissed the juror again, and instructed the jury to begin their deliberations anew. The jury deliberated for an additional hour before delivering its verdict.

18

The Supreme Court has held that the mere presence of alternate jurors in jury deliberations does not affect a defendant's substantial rights. *See United States v. Olano*, 507 U.S. 725, 741 (1993). But "the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the jurors." *Id.* at 739 (citations omitted). The Ohio Supreme Court has held that "reversible error occurs where, over objection, an alternate juror participates in jury deliberations resulting in an outcome adverse to a defendant and either (1) the state has not shown the error to be harmless, or (2) the trial court has not cured the error." *State v. Gross*, 776 N.E.2d 1061, 1099 (Ohio 2002).

Avery argues that because the trial court failed to question all the jurors and the record does not indicate whether the alternate nonverbally participated or exerted a chilling effect, then the state failed to show the error was harmless. But the state is not required to show harmless error when the trial court cures the error. *See Gross*, 776 N.E.2d at 1099. The record reflects that the trial court cured the error by dismissing the juror again and instructing the jury to begin "deliberations all over again, just as though you just started." DE 45, Trial Tr. Vol. V, Page ID 2335. The record further reflects that the jury likely did so by deliberating for approximately an additional hour. By comparison, in *Gross*, the Ohio Supreme Court found error because of the presence of alternates in jury deliberations where there was "specific evidence of active disruption of the deliberative process that pose[d] a significant risk of affecting jury functions . . . [and] the trial court accepted the jury's verdict regarding the death sentence without making any attempt to cure the apparent error." 776 N.E.2d at 1099 (describing participation by the alternate jurors and their disruptive behavior, like throwing objects in the jury room). As the trial court cured the error

of the presence of an alternate in jury deliberations, Avery's claim of error on appeal likely had limited merit.

It is notable, however, that the trial court judge made a problematic comment to the jury after denying the motion for a mistrial prior to releasing the jury to redeliberate. He stated:

> Before I answer your question—and I apologize, because obviously, I didn't make it clear what had to happen, and I want you to know, you know, I'm just a country boy like the rest of you, or country girls, but at any rate, I serve on the Ohio Judicial Conference Civil Law and Procedure Committee, and we just got done discussing a pending bill in the Legislature right now that we have heartily endorsed, and kind of asked for, and it is to allow the alternate to do exactly as you did, to go back, not to participate, but be able to listen to what is being said, so that if they get to arguing, and one has a heart attack, and have to carry him out, and you have to replace them, that we don't have to send the Sheriff out after you, then start deliberations all over again, you not knowing what went on, and what the thoughts were of the other persons.

> Unfortunately, that has not passed yet. They're still fooling around with school bills, and all that business, and so, and they say that it has every chance of passing. There's not much opposition to it. But there are a lot of good things to it, and just about no bad things about it. So I say that to you.

DE 45, Tr., Page ID 2334–35. Avery argues that "the trial court may have compounded any prejudice by sharing with the jury its personal views of the merits of the Ohio alternate-juror rule." CA6 R. 18, Appellant Br., at 51.[8] But the trial judge acknowledged that this bill had not passed and was not the rule. More importantly, the judge's comment has no bearing on the fact that the judge corrected and cured the error by excusing the alternate and directing the jurors to start deliberations anew, which he did before the jury redeliberated and delivered its verdict.

---

[8] Avery suggests that the trial court may have denied Avery's mistrial motion due to his personal views, but this speculation is unsupported by the record beyond the trial judge's general remarks about the rule.

"Counsel's performance is strongly presumed to be effective," and it is not deficient performance to decline to raise issues that lack merit on appeal. *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000); *see Jones v.* Barnes, 463 U.S. 745, 753–54 (1983). Given the record and Ohio case law, we cannot conclude that Avery's appellate counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 687; *Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010).

## C

Even if appellate counsel's performance was constitutionally deficient, Avery cannot establish prejudice. To establish prejudice, Avery relies on *State v. Miley* and *State v. Locklear* to argue that but for appellate counsel's failure to raise the alternate-juror issue he would have prevailed on appeal. In *State v. Miley*, the Ohio Court of Appeals held that a failure "to discharge the alternate juror at the time the jury retired for deliberations" violates "the express mandate of Crim. R. 24(F)." 603 N.E.2d 1070, 1072 (Ohio Ct. App. 1991). Similarly, in *State v. Locklear*, the Ohio Court of Appeals concluded that when a defendant properly objects to a Rule 24 violation, the "only" remedy is to declare a mistrial. 401 N.E.2d 457, 458–59 (Ohio Ct. App. 1978). But these cases are distinguishable because both involve the *substitution* of a juror during deliberations, which was not the case at Avery's trial. In the cases cited by Avery, the jurors were impermissibly substituted *and* impermissibly participated, which is distinguishable from an impermissibly present, but silent, alternate juror.

Under Ohio law, the trial court may cure the error of an alternate juror's presence in deliberations. *See Gross*, 776 N.E.2d at 1099. This is exactly what occurred in Avery's case. The trial court ensured that the alternate did not participate in deliberations (confirmed by the alternate and the foreperson), dismissed the alternate, and then directed the jury to start deliberations anew.

21

It is not clear what more the trial court could have done to cure the error. Therefore, Avery has not shown he would have prevailed on appeal with his alternate-juror claim.

The parties disagree about whether a showing of actual prejudice, beyond the prejudice required to prove *Strickland* prejudice, is required to excuse procedural default. Avery points to *Chase v. MaCauley*, in which this court noted that "ineffective assistance of appellate counsel . . . is a well-recognized basis for showing cause and prejudice" sufficient to excuse procedural default. 971 F.3d 582, 592 (6th Cir. 2020). Similarly, in *Joseph v. Coyle*, we explained that "establishing *Strickland* prejudice likewise establishes prejudice for the purposes of cause and prejudice." 469 F.3d 441, 462–63 (6th Cir. 2006).

The Warden relies on *Ambrose v. Booker*, 684 F.3d 638 (6th Cir. 2012), and *Jones v. Bell*, 801 F.3d 556 (6th Cir. 2015), to support her argument that a separate showing of prejudice is necessary. But, as Avery correctly points out, *Ambrose* did not involve a *Strickland* claim. Therefore, we had no choice but to conduct a separate inquiry into prejudice. Avery further correctly argues that the court in *Jones* then misread dicta from *Ambrose* in reaching its conclusion that procedural default requires a showing of prejudice beyond that required by *Strickland*.

A separate finding of actual prejudice beyond *Strickland* prejudice is not required. *See Joseph*, 469 F.3d at 462–63; *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 379 (6th Cir. 2007). We affirm, however, the district court's finding that Avery has not demonstrated cause and prejudice from ineffective assistance of appellate counsel excusing Ground 2's procedural default.

## VI

We affirm the district court's holding that Avery is entitled to equitable tolling. We deny Avery's motion to expand the certificate of appealability to include Ground 1 of his federal habeas corpus petition. We affirm the district court's holding that Ground 2 is procedurally defaulted and that Avery cannot demonstrate cause and prejudice to excuse Ground 2's procedural default.

**RALPH B. GUY, JR., Circuit Judge, concurring in the judgment.** If Avery's habeas petition were timely, I would agree that his claims are procedurally defaulted. (Maj. Op. Parts IV and V). But I would not reach that question because Avery is not entitled to equitable tolling. (*But see* Maj. Op. Part III). This case begins and ends with the one-year statute of limitations under 28 U.S.C. § 2244(d)(1). All agree that Avery filed the instant habeas petition just shy of six years after the limitations period began to run on April 17, 2012—and over one year and nine months *after* the nonretroactive legal development announced in *In re Stansell*, 828 F.3d 412 (6th Cir. 2016), which Avery invoked in order to file his instant petition. The only reason Avery offers for permitting this delay is his contention that he should benefit from *Stansell*'s nonretroactive change in the law and that he did not learn about *Stansell* until he was personally informed by a fellow inmate. This has never been sufficient to constitute the "extraordinary circumstances" required to warrant equitable tolling under well-established precedent and the undisputed facts. Because the warden is correct that the instant petition is time-barred and Avery is not entitled to equitable tolling, I would leave it at that and affirm the district court's judgment.

## I

The timeline here is telling. In 1997, Avery was convicted and sentenced to thirty years in prison for rape, aggravated burglary, robbery, and kidnapping. *State v. Avery*, 709 N.E.2d 875, 878 (Ohio Ct. App. 1998) (affirming the judgment). The Ohio Supreme Court declined to allow an appeal. *State v. Avery*, 703 N.E.2d 327 (Ohio 1998).

On June 9, 2000, Avery's first federal habeas corpus petition was dismissed without prejudice at Avery's request in order to allow him to exhaust state court remedies. R. 23, *Avery v. Brigano*, No. 99-cv-459 (S.D. Ohio June 9, 2000). On January 13, 2003, Avery's second petition was dismissed as time-barred. (R. 5-2, PgID 864).

In 2010, the Ohio trial court granted Avery's motion for resentencing because, when Avery was sentenced in 1997, the trial court did not properly advise Avery of the five-year mandatory term of post-release control. (R. 5-1, PgID 572). That is, the court told Avery at sentencing that he would be subject to "up to five years of mandatory post-release control" and the sentencing entry noted that Avery was subject to post-release control under Ohio Rev. Code § 2967.28, but the court did not specifically note the applicable five-year mandatory term of post-release control under § 2967.28(B)(1). (R. 10-3, PgID 1176-77; *see* R. 5-1, PgID 567). The trial court conducted a de novo sentencing hearing and again imposed a thirty-year sentence. *State v. Avery*, No. 14-10-35, 2011 WL 3656470, at *1 (Ohio Ct. App. Aug. 22, 2011). Avery appealed, challenging his conviction; the court of appeals affirmed, *id.*; and on January 18, 2012, the Ohio Supreme Court declined to allow an appeal. *State v. Avery*, 959 N.E.2d 1056 (Ohio 2012).

On January 23, 2013, Avery filed his third federal habeas petition, and the petition was transferred to this court on September 13 to decide whether Avery may file a successive habeas petition under 28 U.S.C. § 2244(b). (R. 5-2, PgID 865-70, 884-85). Avery argued that his 2010 resentencing resulted in a new judgment that restarted the petition count under *Magwood v. Patterson*, 561 U.S. 320 (2010), which held that where "there is a new judgment intervening between the two habeas petitions," as a result of "a full resentencing," a habeas petition "challenging the resulting new judgment is not second or successive at all." 561 U.S. at 331, 339-42 (cleaned up).

On May 21, 2014, this court concluded that Avery's habeas petition was successive and denied him authorization to file it. *In re Avery*, No. 13-4098, 2014 U.S. App. LEXIS 25220, at *5-7 (6th Cir. May 21, 2014). In rejecting Avery's argument, this court reasoned that:

25

> The Supreme Court noted, without overruling or casting doubt upon, this court's prior ruling "that a petitioner who succeeds on a first habeas application and is resentenced may challenge only the 'portion of a judgment that arose as a result of a previous successful action.'" [*Magwood*, 561 U.S. at 342] n.16 (quoting *Lang v. United States*, 474 F.3d 348, 351-52 (6th Cir. 2007)).

*Id.* at *5-6.

The law later changed in this jurisdiction. In 2015, this court held that "a habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed *conviction* without triggering the 'second or successive' requirements." *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015). Then, on July 1, 2016, this court held that "a partial resentencing that results in the imposition of post-release control is the *type* of change that creates a new judgment for purposes of the second or successive bar." *In re Stansell*, 828 F.3d 412, 416-17, 419 (6th Cir. 2016).

On July 17, 2017, Avery moved this court for authorization to file his fourth habeas petition. (CA6 No. 17-3769, R. 1 at 1). He cited as a "new rule of constitutional law" *Magwood* and *In re Smith*, No. 16-4699 (6th Cir. May 11, 2017), and asserted that he "only recently became aware of Magwood applying" to his situation because Smith is a fellow inmate. (*Id.* at 5-6). This court concluded: "Avery's 2010 resentencing resulted in a 'new judgment,' and his motion for an order authorizing the district court to consider a second or successive motion to vacate is therefore unnecessary. Avery faces no procedural impediment to filing a new § 2254 action in the district court and does not need the authorization of this court to file such an action." *In re Avery*, No. 17-3769, 2018 U.S. App. LEXIS 4228, at *4-5 (6th Cir. Feb. 21, 2018). But this court "did not address the statute of limitations or equitable tolling." (Maj. Op. 7).

On April 12, 2018, Avery filed the instant petition—his fourth habeas petition. (R. 1, PgID 16). After the district court denied the petition, this court granted Avery a certificate of

appealability (COA) on one of his fifteen claims. *Avery v. Wainwright*, No. 20-3530, 2020 U.S. App. LEXIS 33423, at *4, *9 (6th Cir. Oct. 22, 2020). Again, this court did *not* mention the statute of limitations or equitable tolling in granting the COA.

**II**

Avery's petition is barred by the statute of limitations and he is not entitled to equitable tolling. Congress set a one-year statute of limitations for filing a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). This limitations period "run[s] from the latest of" four trigger dates, § 2244(d)(1)(A)-(D)—and the majority agrees that the relevant start date for Avery's petition is "the date on which [his] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* § 2244(d)(1)(A); *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); (Maj. Op. 5-6). "A new, worse-than-before sentence . . . amounts to a new judgment," which "not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts [the] one-year window to challenge that judgment." *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (per curiam); *see also Freeman v. Wainwright*, 959 F.3d 226, 230 (6th Cir. 2020) ("[W]e are not bound by the label a state court places on its actions" in deciding whether there is new judgment for purposes of § 2244.).[1]

Accepting that Avery's 2010 resentencing created a new judgment, the majority agrees that Avery's resentencing judgment became final on April 17, 2012—when the time for filing a petition for certiorari with the United States Supreme Court expired ninety days after the Ohio Supreme Court dismissed Avery's resentencing appeal. *Gonzalez*, 565 U.S. at 150; (Maj. Op. 6).

---

[1] Although the warden notes that as a result of Avery's 2010 "resentencing," "Avery's sentence did not change" because it "has always included a 30-year prison term with a 5-year term of postrelease control," the warden does not appear to contest that the resentencing restarted the one-year clock. (Appellee Br. 10, 22-31).

Accordingly, *the limitations period started on* April 17, 2012. And without equitable tolling, *it expired one year later on* April 17, 2013. Avery, the magistrate judge, the district judge, and the majority opinion agree on this much. (Reply Br. 6; R. 21, PgID 1557; R. 27, PgID 1606; Maj Op. 6). But Avery filed the instant petition on April 12, 2018. (R. 1, PgID 16). Without nearly six years of equitable tolling, this action is time-barred.

**III**

The majority agrees that "the facts here are undisputed, and so we review the district court's grant of equitable tolling de novo." (Maj. Op. 6); *see also Solomon v. United States*, 467 F.3d 928, 932 (6th Cir. 2006). "[E]quitable tolling is used sparingly by federal courts. The party seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citation omitted).

"[A] petitioner is entitled to equitable tolling *only if* he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up; emphasis added) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "[T]he diligence prong . . . covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 (2016). Even assuming Avery has shown diligence, he has not met his burden.

Nine months and six days after the limitations period started, Avery filed his third federal habeas petition on January 23, 2013. (R. 5-2, PgID 865-70). But "the filing of a petition for habeas corpus in federal court does not toll the statute of limitations." *Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). Over thirteen months *after* the expiration of the limitations period, this court denied Avery authorization to file his third habeas petition. *In re Avery*, No. 13-4098, 2014 U.S.

App. LEXIS 25220, at *5-6 (6th Cir. May 21, 2014). By that time, the limitations period had long since expired. But even if his 2013 petition did toll the clock until this court's 2014 ruling, Avery had less than three months to file his instant petition.

*Avery has not established an "extraordinary circumstance."* Avery's sole basis for equitable tolling is that he "learned about the decisions in *King* and *Stansell* in May 2017 when this court applied them to a case involving one of Avery's fellow inmates." (Reply Br. 5.) The majority opinion represents, however, that "Avery is not merely claiming that he did not receive notice of a legal rule and therefore he is entitled to equitable tolling. . . . He is relying on a change in the law from which a [2018] panel of this court has already found he should benefit." (Maj. Op. 11). These semantics do not change reality. And as the majority opinion candidly admits, this court's 2018 order "did not address the statute of limitations or equitable tolling." (Maj. Op. 7); *see also In re Avery*, No. 17-3769, 2018 U.S. App. LEXIS 4228.

Avery's argument is not enough for several reasons.

*First*, as a fundamental matter, the majority opinion conflates the "diligence" prong and the "extraordinary circumstance" prong, treating the two as the same. In finding that extraordinary circumstances exist here, the majority opinion essentially repeats its diligence analysis and asks: "What more could [Avery] have done to ensure that his current petition was filed in as timely a manner as possible?" (Maj. Op. 11). But that pertains to the diligence prong, not the extraordinary circumstances prong. These "two requirements" are "distinct elements." *Menominee Indian Tribe*, 577 U.S. at 255-56. "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* (relying on *Holland*, *Pace*, and *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007)).

29

*Second*, it is not extraordinary that, on July 1, 2016, this court in *Stansell* announced a different interpretation of § 2244(b) than was previously applied in Avery's case in 2014. As the Supreme Court has explained:

> It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation. Although our constructions of federal statutes customarily apply to all cases then pending on direct review, *see, e.g.*, *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993), not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final. If *Artuz* justified reopening long-ago dismissals based on a lower court's unduly parsimonious interpretation of § 2244(d)(2), then *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), would justify reopening long-ago grants of habeas relief based on a lower court's unduly *generous* interpretation of the same tolling provision.

*Gonzalez v. Crosby*, 545 U.S. 524, 36-537 (2005) (first emphasis added; footnote omitted). For better or worse, nonretroactive legal developments are not "extraordinary" circumstances for a do-over. *Id.*; *cf. United States v. Hunter*, 12 F.4th 555, 562-69 (6th Cir. 2021); *United States v. McKinnie*, 24 F.4th 583, 587-88 (6th Cir. 2022).

But even assuming Avery should be able to benefit from *Stansell*'s clarification of the law, Avery did not file the instant petition until April 12, 2018. (R. 1, PgID 16). And the majority agrees that was more than "one year and nine months after *Stansell* was decided." (Maj. Op. 10). Yet even after *Stansell*, Avery has not pointed to any "extraordinary circumstance that stood in his way" of filing his petition. *Holland*, 560 U.S. at 649.

*Second*, Avery did not file the instant habeas petition in May 2017. Instead—two months later—on July 17, 2017, Avery moved this court *for authorization to file* his fourth habeas petition. (CA6 No. 17-3769, R. 1 at 1). That motion did not toll the limitations period. *See Rhines*, 544 U.S. at 274-75. Avery made "a garden variety" procedural mistake—there was no obstacle outside his control to justify equitable tolling. It is well established that his "*pro se* status and lack of

knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012).

*Third*, recall that this court decided *Stansell* on July 1, 2016. It is irrelevant that Avery did not have actual notice of the case and its relevance to his situation until May 2017. Again, Avery's "*pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Id*. Indeed, this court "has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'" *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)); *see also Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005). Similarly, "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations," where these obstacles have "not prevented the petitioner from accessing the courts." *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). And "pro se status and limited law-library access" do not merit equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011). Even a petitioner's alleged lack of access to state court records and his case file does not warrant equitable tolling. *See id.* ("If anything, the rules [governing habeas petitions] seem to envision that petitioners may at times have to file their petitions without having had access to the state-court record."). If a petitioner need only make the bald assertion that he did not receive notice of a new, nonretroactive legal rule—without more—every habeas applicant would be entitled to equitable tolling and the limitations period set by Congress would be a nullity.

Neither Avery nor the majority opinion has cited a case where equitable tolling applied based solely on a change in the law and further delay until a petitioner allegedly received actual notice of the change.

31

Avery and the majority offer only the divided-panel decision in *Jones v. United States*, 689 F.3d 621, 626-28 (6th Cir. 2012). (Reply Br. 8; Maj. Op. 8-10). But this case is nothing like *Jones*. There, this court held that *Begay v. United States*, 553 U.S. 137 (2008), announced "a new, substantive rule," that "applies retroactively." *Jones*, 689 F.3d at 624-26. On the issue of equitable tolling, *Jones* noted that "[g]enerally, to qualify as 'extraordinary circumstances,' the petitioner must show more than just his status as pro se or his limited access to a law library." *Id.* at 627 (citing *Hall*, 662 F.3d at 751). The court reasoned that: "Jones missed the one-year deadline by less than three months"; Jones "did not learn of the Supreme Court's holding in *Begay* until May 12, 2009"; "before *Begay* was announced, Jones . . . was transferred without his legal materials to a new facility following medical treatment"; Jones was transferred "to yet another [facility] in West Virginia, but he did not arrive until September 2008 after spending time in holding facilities in Georgia and Oklahoma, still without his legal materials"; "Jones [was] partially illiterate and . . . rel[ied] on other prisoners for knowledge of changes in the legal landscape"; he also had "a variety of medical conditions, including seizures, that require frequent medication and impeded his ability to adequately obtain legal information"; and "[w]ithin two months of learning of his new right [under *Begay*]," he filed his "motion to vacate under § 2255." *Id.* at 627. In concluding that equitable tolling applied, *Jones* states: "Although any one of the above factors may not constitute 'extraordinary circumstances' alone, *the combination of all of these factors* justifies applying equitable tolling to Jones's claims." *Id.* at 627 (emphasis added). *Jones* acknowledged our decision in *Hall* but makes no mention of the host of other binding precedent. *See, e.g.*, *Keeling*, 673 F.3d at 464; *Allen*, 366 F.3d at 403; *Cobas*, 306 F.3d at 444.[2]

---

[2] The concurrence in *Jones* did not find equitable tolling appropriate but concurred in the result only "because the [government] waived the one-year procedural bar." *Jones*, 689 F.3d at 628. Here, the warden has not forfeited the statute of limitations argument. (R. 20, PgID 1526-37; R.

This case does not involve any of the factors in *Jones*. *Stansell* is not a new, substantive rule that applies retroactively. Avery does not have a serious mental or physical condition that prevented him from filing on time. *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 851-52 (6th Cir. 2017); *Ata v. Scutt*, 662 F.3d 736, 742-45 (6th Cir. 2011). Avery was not separated from his legal materials, he is not illiterate, and he did not miss the filing deadline by a mere three months.

The majority opinion even admits that "a variety of factors weighed into [the] decision in *Jones* that are not present in Avery's case." (Maj. Op. 9). Yet it concludes, nonetheless, that "*Jones* provides precedent for granting equitable tolling" here. *Id.* That is implausible. To the extent *Jones* can be viewed as consistent with the binding decisions pre-dating *Jones*, its holding was based on "the combination of *all* of th[e] factors" present in *Jones.* 689 F.3d at 627 (emphasis added). Here, we do not have even a single factor that was present in *Jones*.

So what reason is there to grant equitable tolling here? We are left with only Avery's mere conclusory assertion that he did not file the instant petition until April 12, 2018—nearly six years *after* his resentencing judgment became final, and more than one year and nine months *after* *Stansell*—because the law did not change until July 2016 and Avery did not actually learn about the change until he was personally informed by another inmate in May 2017. But as explained, a change in the law, ignorance of that change, and pro se status are not grounds for equitable tolling.

The grant of equitable tolling here makes this case a first. No matter how you slice the timeline here, Avery is not entitled to equitable tolling. In concluding otherwise, this case stands as a marked, liberal expansion of equitable tolling in this jurisdiction.

---

24, PgID 1573-85; Appellee Br. 19-31.)

\*　　\*　　\*

I would affirm the district court's dismissal of Avery's habeas petition because it is barred by the statute of limitations and Avery is not entitled to equitable tolling.